RHEINSTROM et al. v. UNITED STATES.

UNITED STATES v. RHEINSTROM et al.

(Circuit Court, S. D. Ohio, W. D. March 21, 1902.)

Nos. 5,293, 5,294, Consolidated.

1. CUSTOMS DUTIES—FRUITS IN SPIRITS—EXCESS OF ALCOHOL.
Under paragraph 263 of the tariff act of 1897, relating to fruits in spirits which imposes a duty of $2.50 "per proof gallon on the alcohol contained therein in excess of 10 per centum," the duty is to be computed on all such excess, whether absorbed by the fruit or supernatant.

2. SAME—VALUATION—ADDITIONS TO ENTERED VALUE.
The French general internal revenue tax on alcohol, which is not collected on goods exported is a part of the dutiable value of such goods when purchased in the markets of France under the provisions of the customs administrative act of 1890, but local taxes, designated as "droit de ville" and "octroi," which vary with the locality, cannot properly be considered as elements of market value.

3. SAME—RECIPROCITY—AGREEMENT WITH FRANCE.
The president's proclamation of May 30, 1898, relating to reciprocity with France, and affecting the rate of duty on brandies and other spirits, does not apply to the excess of alcohol above 10 per centum used in preserving fruits, specially dutiable under paragraph 263 of the tariff act of 1897.

Cross-appeals by the importers and United States from a decision of the board of United States general appraisers, which reversed, in part, the decision of the surveyor of customs at the port of Cincinnati.

The following is the opinion of the board (Somerville, General Appraiser):

The importation in question consists of 38 casks of white cherries, imported August 1, 1898, from Bordeaux, France. The fruit was preserved in spirits, and contained over 10 per cent. of alcohol. It was assessed for duty under paragraph 263, Tariff Act July 24, 1897, which specially enumerates "fruits preserved in * * * spirits," and provides that, "if containing over 10 per centum of alcohol and not specially provided for in this act," (they shall be dutiable at) "thirty-five per centum ad valorem, and in addition two dollars

and fifty cents per proof gallon on the alcohol contained therein in excess of ten per centum." In appraising the merchandise, as appears from the record and testimony in the case, the local appraiser added to the invoice and entered value a certain amount for the French internal revenue tax on alcohol, as follows (see Synopsis, 20,218):

|  | Francs. |
|---|---|
| Invoice and entered value | 16,190.35 |
| Add for French internal revenue tax on 44.12 liters, at 210.25 francs per 100 liters | 9,276.44 |
|  | 25,466.79 |

Duty was assessed upon this appraised value of 25,466.79 francs at the rate of 35 per cent. ad valorem, and, in addition thereto, a duty of $2.50 per proof gallon was assessed on the alcohol contained in the importation in excess of 10 per cent. The so-called French internal revenue tax is explained by the report of the United States consul at Bordeaux, France, which was introduced in evidence by both the government and the importer, from which we make the following extract:

"From this knowledge, I further certify that the provisions of the French law in regard to the taxation of alcohol are as follows:

"(1) A general tax on alcohol consumed in France, without regard to its origin, which is the same throughout the entire country, amounting to 156 francs 25 centimes per hectoliter. This tax is not collected in case of exportation.

"(2) At Bordeaux there is a special tax for the benefit of the city of Bordeaux of 30 francs per hectoliter. This tax is not collected in case of exportation.

"(3) The 'octroi' duty on alcohol sold or consumed in the city of Bordeaux is 24 francs per hectoliter. This tax is not collected in case of exportation.

"The method pursued in the case of manufacturers who use alcohol in the preparation of their products is as follows: The manufacturer becomes a bonded warehouseman. He purchases alcohol from distilleries which are operated under government supervision, not paying the tax at the time of purchase, but being held responsible for same under specific regulations. When imported by him, the amount of alcohol in the manufactured article is determined by the customs officials, and the amount deducted from his stock in bond, and the manufacturer pays tax on the balance which remains in his hands after the expiration of a certain time, six or twelve months, as the case may be. If sold by him for consumption in France,—that is, for shipment to any point not in a foreign country,—the tax must be paid before it leaves the premises; that is, the bonded warehouseman is responsible for the tax on all alcohol which comes into his hands, except the amount for which he is able to produce vouchers from the customs administration, showing its actual exportation to a foreign country. The special 'droit de ville' and the 'octroi' are paid only on alcohol sold or consumed in this city. They also do not attach to the exported product. This is not what is technically termed a 'drawback' or 'remission of tax,' because the tax is levied by the law only on alcohol consumed in French territory, and so does not attach to the exported article. It is a 'droit de consommation,' or tax on consumption. The same is true of the 'droit de ville' and 'octroi.' They are taxes on the amount consumed in the city for which they are levied. It is not a rebate, because the liability of the bonded manufacturer is only for the amount consumed in France, not all that is manufactured there. When the bonded manufacturer settles his bonded liability, the amount exported is deducted from his taxable stock, and he pays the amount of all these taxes on the balance, amounting in the city of Bordeaux to—

|  | Francs. |
|---|---|
| General consommation tax, per hectoliter | 156.25 |
| Special droit de ville, per hectoliter | 30.00 |
| Octroi or general municipal, per hectoliter | 24.00 |
| Total | 210.25 |

"This was the amount of taxation levied on all alcohol sold for consumption in Bordeaux in August, 1896, as well as at the present time. If sold by the warehouseman for shipment to any other port of France, alcohol does not pay the 'octroi' tax or special 'droit de ville' of Bordeaux. In that case the receipt of the customs officers showing shipment by rail or boat to another city relieves him of these taxes, and the buyer pays whatever the 'octroi' or other municipal duties, whatever they may be, at the place where it is entered for consumption."

In ascertaining the amount of alcohol contained in the importation, as appears from the testimony taken at the hearing, the local appraiser included not only the alcohol which was contained in the supernatant fluid surrounding the cherries in the casks, but also the alcohol which had been absorbed by the cherries. This was determined by expressing the juice from the cherries, and making a chemical analysis of the product, so as to ascertain the volume of alcohol contained therein. There is no question raised by the importer that the amount of alcohol reported by the appraiser was correct, if it be permissible, under the law, to levy a duty upon the amount contained both in the liquid and in the cherries. The following objections are urged against the action of the surveyor, without challenging the correctness of the classification as made under said paragraph 263: First. That duty should have been assessed only on the alcohol contained in the supernatant liquid, excluding that contained in the cherries. Second. That the appraiser, in making an appraisement of the merchandise, proceeded upon a wrong principle, and had no right to add any one of the items of internal revenue tax represented as follows: (1) The general internal revenue tax of 156.25 francs per hectoliter; (2) the special "droit de ville" tax for the city of Bordeaux of 30 francs per hectoliter; (3) the "octroi" tax also levied locally for the city of Bordeaux of 24 francs per hectoliter. Third. That the alcohol contained in the importation is subject to a duty of $1.75, and not $2.50, per gallon, by reason of the president's proclamation bearing date May 30, 1898, issued under the authority of section 3, Tariff Act July 24, 1897 (Synopsis, 19,405), and having reference to reciprocal commercial arrangements with France, and which reduces the rates of duty on "brandies or other spirits manufactured or distilled from grain or other materials," it being admitted that the goods in question were exported from France after the issue of said proclamation.

As to the first objection urged, we think it is untenable. The purpose of paragraph 263 is, very clearly, to levy a duty of $2.50 per proof gallon on the alcohol contained in the goods in excess of 10 per cent., and not merely upon that which is contained in the liquid surrounding the fruit. In our judgment, the statute is not susceptible of a construction which would exclude from duty any portion of the alcohol contained in the importation, whether it be found in the liquid or in the fruit. We think the action of the appraiser was correct in adding the amount of general internal revenue tax on alcohol represented by the item of 156.25 francs per hectoliter. This was a general revenue tax prevailing throughout France, and levied upon all alcohol sold for consumption in any of the markets of that country, and is shown to have been remitted on all alcohol exported from that country, whether contained in fruits or otherwise. It was entirely analogous to the so-called "German duty," or "bonification tax," passed on by the supreme court in Passavant's Case (169 U. S. 16, 18 Sup. Ct. 219, 42 L. Ed. 644), and board decision in Re Passavant (G. A. 4,074). The appraiser proceeded upon no wrong principle in adding the amount of this tax as a part of the dutiable value of the merchandise in the markets of France.

We reach a different conclusion, however, as to the other two items of special local taxes, imposed by the city of Bordeaux, and designated as "special droit de ville," 30 francs per hectoliter, and the "octroi," or general municipal tax, of 24 francs per hectoliter. As shown by the report of the American consul at Bordeaux, these local taxes are paid only on alcohol sold or consumed in the city of Bordeaux. This is confirmed by the ordinary definition of the "octroi" tax, which is stated in the Standard Dictionary to be a tax "levied at the gates of a European city, especially in France, and also in the cities of British India, on articles about to be introduced"; and is further defined by the Century Dictionary as "a tax or duty levied at the gates of

cities, particularly in France and certain other countries of the European continent, on articles brought in." In the Encyclopædia Britannica (volume 9 [Ed. 1879] p. 523), this statement occurs: "Octroi.—In 1,510 towns a duty is levied on goods, especially upon provisions and liquors, brought to market for public sale or disposed of privately" in France. It is added: "This tax is far from being uniform, the percentage in some places—as Paris—being as low as 4.76 francs for every 100 inhabitants, and in some others as high as 13.55 (Amiens), 14.15 (Rouen), 14.98 (Bordeaux), and 15.56 (Versailles). It is fixed by a decision of the municipal council, subject to the sanction of the legislative chambers." This tax being purely local, and lacking uniformity throughout the dominions of France, cannot, in our judgment, be properly considered as a certain or fixed element of market value in the principal markets of that country in ascertaining the market value of merchandise under the provisions of the customs administrative act of June 10, 1890. Moreover, we are officially advised that the practice of the boards of reappraisement is uniformly to exclude these two items of "octroi" and "droit de ville" in making appraisements of similar merchandise exported from France. The appraiser and surveyor having proceeded upon a wrong principle in adding these two items of the market value of the goods in question, the surveyor's decision could properly be attacked by protest, and it was not necessary for the importers to call for a reappraisement, under section 13 of the act of June 10, 1890, under the rules declared in the Passavant Case, supra.

The third contention made in the protest, which claims a reduction of the rate of duty on the alcohol contained in the cherries by reason of the president's proclamation of May 30, 1898, must be overruled as entirely untenable, for the reasons fully stated in board decision in Re Nicholas (G. A. 4,311), where it was held that the proclamation in question embraced only "brandies or other spirits manufactured or distilled from grain or other materials" which were the product of France. In the present case the alcohol in which the cherries are preserved, in excess of 10 per cent., is specially provided for in said paragraph 263, under which the present classification was made, and is not included within the provisions of said paragraph 289, which embraces a class of merchandise entirely distinct for dutiable purposes.

The protest is sustained so far as it objects to the inclusion in the dutiable value of said merchandise of the items represented by the "octroi" and the "droit de ville" taxes, and the surveyor's decision is to this extent reversed, with instructions to reliquidate the entry upon a basis of value excluding any consideration of these two local taxes. In all other respects the protest is overruled, and the surveyor's decision affirmed.

James & Jones, for appellants.
Wm. E. Bundy, U. S. Atty.

THOMPSON, District Judge. The determination of the questions presented depends upon the construction to be given to paragraph 263 of the tariff act of July 24, 1897, which, in so far as it is pertinent to the controversy here, provides as follows, to wit:

"Fruits preserved in * * * spirits, * * * one cent per pound and thirty-five per centum ad valorem; if containing over ten per centum of alcohol, * * * thirty-five per centum ad valorem and in addition $2.50 per proof gallon of the alcohol contained therein in excess of ten per centum."

The objections to the assessment made by the local officers were stated by Judge Somerville, in delivering the opinion of the board of general appraisers, as follows: First. That duty should have been assessed only on the alcohol contained in the supernatant liquid, excluding that contained in the cherries. Second. That the appraiser, in making an appraisement of the merchandise, proceeded upon a wrong principle, and had no right to add any one of the items of in-

ternal revenue tax represented as follows: (1) The general internal revenue tax of 156.25 francs per hectoliter; (2) the special "droit de ville" tax for the city of Bordeaux of 30 francs per hectoliter; (3) the "octroi" tax also levied locally for the city of Bordeaux of 24 francs per hectoliter.

As to the first objection: The taxable subject is fruit preserved in spirits; the fruit and the spirits together constitute the taxable subject. If the spirits contain but 10 per centum, or less, of alcohol, the rates of duty to be levied on the fruit so preserved are 1 cent per pound and 35 per centum of its market value "in the principal markets of the country from whence imported." But if the spirits contain over 10 per centum of alcohol, the rates of duty to be levied on the fruit so preserved are 35 per centum of its market value in said markets, and $2.50 per proof gallon of alcohol in excess of 10 per centum, whether absorbed by the fruit or supernatant. In the first case the duties rest on the alcohol only in so far as it contributes to the weight and value of the fruit and spirits, including 10 per centum of the alcohol. An additional specific duty is laid of $2.50 per gallon on the excess of alcohol over the 10 per centum, and there is no suggestion in the language of the statute that in determining the amount of the excess the alcohol absorbed by the cherries should be eliminated from the computation.

As to the second objection: The ruling of the board of general appraisers is not seriously questioned by counsel on either side. The court approves the finding of the board of general appraisers.